THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* JOHN N. LARSEN *et al.* Appellees.

*Opinion filed October 16, 1914—Rehearing denied Dec. 3, 1914.*

1. APPEALS AND ERRORS—*bill of exceptions is not necessary to a review of errors in the record proper.* The purpose of a bill of exceptions is to enable a party to have a review of matters which would otherwise not be of record, but no bill of exceptions is necessary or proper for the purpose of a review of errors assigned upon the record proper, and such errors may be considered notwithstanding the party does not avail himself of the privilege of filing a bill of exceptions.

2. QUO WARRANTO—*when corporation is not a proper party defendant.* Where a *quo warranto* proceeding is against an existing corporation for a misuse of its franchise or an usurpation of powers not conferred the information should be against the corporation, and if it appears and pleads in its corporate character its corporate existence cannot afterward be controverted; but where the purpose of the proceeding is to challenge the existence of a corporation by calling upon individuals to show by what right they claim to hold and exercise the franchise of a corporation the corporation itself is not a proper party.

3. SAME—*People have right to inquire into title by which corporate franchise is claimed.* A corporate franchise proceeds from the sovereign power, and the People have the right at all times to inquire into the title by which such a franchise is claimed or exercised and to a judgment of ouster if the franchise was improperly granted, and the statute expressly authorizes the Attorney General or State's attorney of the proper county to prosecute, by leave of

court, an information in the nature of *quo warranto* to try the right to the franchise claimed.

4. SAME—*prosecution by information in quo warranto is within section 33 of article 6 of the constitution.* A prosecution by information in the nature of *quo warranto* is within section 33 of article 6 of the constitution, requiring all prosecutions to be carried on "in the name and by the authority of the People of the State of Illinois" and to conclude "against the peace and dignity of the same," but there may be a compliance with such provision though the words are not in the precise form contained in the constitution.

5. CORPORATIONS—*payment of one-half of the capital stock is a condition precedent to lawful organization.* The provision of the statute authorizing the Secretary of State to issue a certificate of complete organization upon the filing of a sworn report of the commissioners that at least one-half the capital stock has been paid in, contemplates that such report shall be true and that the payment of one-half the capital stock shall be a condition precedent to the lawful organization of the corporation, and if such report is false in that respect the People may in a direct proceeding successfully attack the corporate existence of the supposed corporation. (*Foster* v. *Hip Lung Ying Kee & Co.* 243 Ill. 163, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORÉ, Judge, presiding.

MACLAY HOYNE, State's Attorney, (ROSENTHAL & KURZ, and FRANCIS J. HOULIHAN, of counsel,) for the People.

OTTO G. RYDEN, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The State's attorney of Cook county, by leave of the circuit court, filed an information in the nature of *quo warranto* against the appellees, calling upon them to answer to the People by what warrant they claimed to hold and execute the franchise of an alleged corporation known as the Purer Ice and Ice Cream Company. After the motion of the defendants to vacate the order giving leave to

file the information had been denied, one of the appellees filed a general demurrer and the others filed a demurrer which was both general and special. The court sustained the demurrers and dismissed the information, and an appeal was allowed to the People.

The order allowing the appeal provided that a bill of exceptions might be filed by the appellant within a given time, but the privilege was not availed of. It is therefore insisted that this court has no jurisdiction to hear and determine the errors assigned, because the appellant did not comply with the terms of the order. A party to a suit may allege exceptions to rulings of the court upon a trial, and for the purpose of making such rulings, and the exceptions thereto, matter of record may tender a bill of exceptions and have it settled, signed and filed, but he need not do so if he does not desire to have the rulings reviewed on appeal or writ of error. The purpose of a bill of exceptions is to enable a party to have a review of matters which would not otherwise be of record, but no bill of exceptions is proper or necessary for the purpose of assigning error upon the record proper. Such errors have been assigned in this case, and the court has jurisdiction to hear and determine them.

It is suggested that the corporation should have been made a defendant, but this is not a proceeding to forfeit the charter of an existing corporation for abuse of its corporate franchise or to restrain it from an unlawful exercise of its franchise. Its purpose is to challenge the existence of the alleged corporation by calling upon individuals to show by what right they claim to hold and exercise the franchise of a corporation. Where the proceeding is against an existing corporation for a misuse of its franchise or a usurpation of powers not conferred the information should be against the corporation, and if it appears and pleads in its corporate character its corporate existence cannot afterward be controverted. As the legal

existence of a corporation was disputed by the information, it would not have been proper to make the Purer Ice and Ice Cream Company a defendant. *People* v. *City of Spring Valley,* 129 Ill. 169; *People* v. *City of Peoria,* 166 id. 517; *People* v. *Central Union Telephone Co.* 192 id. 307; *People* v. *Anderson,* 239 id. 266.

A corporate franchise proceeds from the sovereign power, and the People have the right at all times to inquire into the title by which such a franchise is claimed or exercised and to have a judgment of ouster if the franchise was improperly granted, and the statute expressly authorizes the Attorney General or State's attorney of the proper county to prosecute, by leave of court, an information in the nature of *quo warranto* to try the right to the franchise claimed. An information in the nature of *quo warranto* is a prosecution, and section 33 of article 6 of the constitution provides that all prosecutions shall be carried on "in the name and by the authority of the People of the State of Illinois," and conclude, "against the peace and dignity of the same." A prosecution by information in the nature of *quo warranto* is included in that provision. (*Donnelly* v. *People,* 11 Ill. 552; *People* v. *Mississippi and Atlantic Railroad Co.* 13 id. 66; *Wight* v. *People,* 15 id. 417; *Hay* v. *People,* 59 id. 94; *People* v. *Gartenstein,* 248 id. 546.) It is argued that the demurrers were properly sustained for want of compliance with the constitutional provision. The information began as follows: "Maclay Hoyne, State's attorney for the said county of Cook, who sues for the People of the State of Illinois in this behalf, comes into court here on this day, and for said People, and in the name and by the authority thereof, according to the form of the statute in such case made and provided, gives the court here to understand and be informed." After the averments of fact the charge is that the franchise of an alleged corporation known as the Purer Ice and Ice Cream Company, the defendants named therein, "during all the

time aforesaid, in the county aforesaid, upon said People have usurped and still usurp, to the damage and prejudice of the said People and against the peace and dignity of the same, whereupon the said State's attorney, for said People, in the name and by the authority thereof, prays the consideration of the court," etc. Courts cannot disregard the requirement of the constitution or permit a prosecution otherwise than as therein provided, but in this case, although the words were not in the precise form contained in the constitution, there was a compliance with the provision.

The information alleged that three persons named therein, on March 27, 1912, filed in the office of the Secretary of State an application for the incorporation of the Purer Ice and Ice Cream Company and statements that the capital stock should be $150,000, the amount of each share $100 and the number of shares 1500; that the Secretary of State issued a license to said persons, as commissioners, to open books for subscription to the capital stock; that the said commissioners made a report, sworn to by them, on April 6, 1912, stating, among other things, that the amount of capital stock actually paid in was $122,100, and showing that the whole stock had been subscribed and giving a list of the original subscribers, when, in truth and in fact, only $12,000, or 120 shares of the capital stock, had been paid for; that the commissioners, on April 10, 1912, filed said report so made on oath with the Secretary of State, who on the same day issued a certificate that the Purer Ice and Ice Cream Company was a legally organized corporation under the laws of the State. The demurrers admitted the fact alleged that the report of the commissioners sworn to by them of the amount actually paid in on the capital stock was false and that the certificate of complete organization was issued upon the faith of such false report.

The statute authorizing the formation of corporations for pecuniary profit provides for the issuing of a license to commissioners to open books for subscription to the capital stock of the proposed corporation, and after the capital stock has been fully subscribed the commissioners are required to convene a meeting of the subscribers, upon notice given as provided in the statute, for the purpose of electing directors or managers and the transaction of such other business as shall come before them. The commissioners must then make a full report of their proceedings, including therein a copy of the notice, a copy of the subscription list, a statement of the amount of the capital not less than one-half actually paid in, the amount of capital not paid in, what disposition has been made of stock subscribed and not paid, and if any of the capital stock has been paid in property the same shall be appraised by the commissioners and they shall report the fair cash value thereof. The report is to be sworn to by at least a majority of the commissioners and filed with the Secretary of State, who is then authorized to issue a certificate of the complete organization of the corporation, which shall be recorded in the office of the recorder of deeds of the county where the principal office of the corporation is located, and upon the recording of the copy the corporation shall be deemed fully organized and may proceed to business. The argument in support of the decision of the circuit court is, that the requirement that one-half of the amount of the par value of the capital stock shall be actually paid in before the certificate of organization can lawfully be issued by the Secretary of State is directory, merely, and not mandatory, and if the sworn report states the required fact, the fact that the report is false and the fact does not exist does not render the certificate or the organization illegal. The grounds of the argument are, that the provision is too indefinite and uncertain to be construed as a condition precedent to the issuing of the final certificate, because it does

not directly command that one-half of the capital stock shall be paid and specifies no person or persons to whom it is to be paid, and because the obligation to pay for the stock subscribed for is to the corporation not yet created, and the statute provides that stock may be paid for in installments. The Secretary of State is only authorized to issue the certificate of complete organization upon a sworn report that one-half of the capital stock has been actually paid in, and to us it seems inconceivable that the General Assembly understood that a certificate could be lawfully issued upon a false affidavit of a fact that never existed. It seems to us too plain for argument or discussion that the payment of one-half the capital stock was intended as a condition precedent to the organization of a corporation, and the sworn report was provided for as evidence of the fact. Surely, the want of an express command that payment shall be made would not justify a conclusion that payment was not intended, and the argument that the statute enables persons appointed as commissioners to collect money without responsibility on their part or that capital would lie idle for a period of time should be addressed to the General Assembly, which has expressed its will in the statute that a corporation can only be organized upon the conditions therein specified. The statute authorizes the issue of stock payable in installments at such time or times as shall be determined by the directors or managers, but that provision is not inconsistent with the requirement that one-half must be paid before there is any corporation. An association may be a corporation *de facto* so that its acts and contracts will be legal and binding as between it and individuals, and its corporate existence can only be challenged in a direct proceeding such as this. Decisions relied upon by counsel for appellees are of that character, and it has never been decided that a corporation could be formed without payment of one-half of the capital stock before the final certificate is issued. That question was not decided in

*Foster* v. *Hip Lung Ying Kee & Co.* 243 Ill. 163, which was a bill in equity by a trustee for an accounting of an alleged partnership, in which it was alleged that a corporation which purchased the property and business of the partnership was fraudulently organized. The court said there was no evidence that one-half of the capital stock had not been actually paid in prior to the report to the Secretary of State and that the legal existence of the corporation could only be determined by a direct proceeding such as this. The decision was that the fact alleged was not proved, and if it had been it would have been of no avail in that suit. The court erred in sustaining the demurrers.

The demurrers were filed on October 22, 1913. Afterward, on December 2, 1913, leave was given defendants to file motions to quash the proceedings. On March 24, 1914, one demurrer was sustained, and on March 27, 1914, motions to vacate the order giving leave to file the information were denied, the demurrers were sustained and the information was dismissed. The defendants took no bill of exceptions to the denial of their motions, which was the proper method of preserving any exception thereto. In this court they asked leave to file a supplemental record, consisting only of a copy of the motions, and, there being no bill of exceptions, leave was denied. One motion stated no reason whatever and the other stated only matters of law, all of which have been disposed of in the foregoing opinion. The record does not show any error in denying the motions.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to overrule the demurrers.

*Reversed and remanded, with directions.*