(No. 22756.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, Appellee, *vs.* THE BLUE ROSE OIL COMPANY, Appellant.

*Opinion filed April 12, 1935—Rehearing denied June 6, 1935.*

JUSTUS CHANCELLOR, (LLOYD C. WHITMAN, of counsel,) for appellant.

OTTO KERNER, Attorney General, (JOHN H. GATELY, and GEORGE F. MULLIGAN, JR., of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This appeal seeks review of the decree of the circuit court of DuPage county entered on an information in equity filed by the Attorney General against the appellant oil company, a corporation, for an accounting, injunction, the appointment of a receiver and the dissolution of the corporation, under the provisions of sections 82 and 83 of the act commonly known as the Business Corporation act. Cahill's Stat. 1933, chap. 32.

The Blue Rose Oil Company, a corporation, was licensed to do business as such in 1925. On July 15, 1929, it applied for, and received, a distributor's license. It operated thereunder until November 27, 1933, when, pursuant to a notice served upon it that it had failed to comply with the Motor Fuel Tax act by refusal to make monthly return and payment of motor fuel tax required, its distributor's license was revoked. Thereafter, on February 5, 1934, the Secretary of State caused notice to be served on it warning it of dissolution under paragraph (c) of section 82 of the Business Corporation act.

The act known as the Motor Fuel Tax act (Cahill's Stat. 1933, chap. 95a,) went into effect on July 1, 1929. Section 3 of that act provides that no person shall act as a distributor of motor fuels without first securing a license to so act from the Department of Finance. A distributor is defined by section 1 of the Motor Fuel Tax act as follows: "For the purposes of this act: * * * 'Distributor' means a person who, for sale or use in this State, either produces, refines, compounds or manufactures motor fuel in this State, or transports motor fuel into this State or receives motor fuel transported to him from without the State." An exception is in this section made of one who receives or transports into the State and sells or uses motor fuel under such circumstances as to preclude the collection of a tax by reason of the provisions of the Federal constitution and statutes.

Sub-sections 1, 2 and 3 of section 15 of the Illinois Motor Fuel Tax act, to which act the Secretary of State referred in his warning of February 5, provide as follows: "Whoever 1. Acts as a distributor of motor fuel after July 31, 1929, without having a license to do so; or, 2. Willfully fails or refuses to make the monthly return, as provided in section 5; or 3. Willfully fails or refuses to make payment to the Department of Finance as provided either

in section 6 or section 7 shall be punished by a fine of not to exceed $5000 or by imprisonment in the penitentiary for not less than one year nor more than five years or by both such fine and imprisonment."

Section 82 of the Business Corporation act, in so far as material here, is as follows: "A corporation may be dissolved involuntarily by a decree of a court of equity upon information filed by the Attorney General when it is made to appear to the court that: * * * (c) The corporation has continued to exceed or abuse the authority conferred upon it by law, or has continued to violate any section or sections of the Criminal Code of the State of Illinois after a written demand to discontinue the same shall have been delivered by the Secretary of State to such corporation, either personally or by mail," etc. By section 83 it is made the duty of the Secretary of State to certify from time to time to the Attorney General the names of corporations which have given cause for dissolution upon information as provided in that act, together with the facts pertinent thereto. The Attorney General, on receipt of such certificate, shall file an information in equity in the name of the People against such corporation for its dissolution. It is also provided in this section that such certificate of the Secretary of State to the Attorney General shall be taken and received in all courts as *prima facie* evidence of the facts therein stated. On hearing on the information filed by the Attorney General an injunction theretofore issued was made permanent, a receiver was appointed, and the chancellor entered a decree ordering an accounting and dissolution of the corporation.

Appellant here argues that it is not a distributor; that it did not abuse the authority conferred on it by its charter as a corporation after receipt of notice from the Secretary of State, did not violate the Criminal Code of the State of Illinois after receipt of such notice, and that the notice of the Secretary of State was insufficient.

The evidence upon which the People rely to support the decree of the chancellor centers about the receipt by the appellant of two cars of motor fuel, numbered NATX-3496 and NATX-7868, these cars having originated outside of the State and been delivered to and unloaded by the appellant at its plant at Clyde, Illinois. The principal questions are whether the appellant exceeded and abused the authority conferred upon it by acting as a distributor without a license after notice, and whether it thus violated the Criminal Code of the State.

The evidence shows that on January 20, 1934, C. D. Duncan, the buyer for the appellant, ordered by telephone of the Altitude Petroleum Corporation, at its offices in Chicago, two cars of motor fuel to be consigned as cars had theretofore been consigned. The cars of motor fuel designated above were shipped on January 24, 1934, from Overton, Texas, consigned to the Altitude Petroleum Corporation, Milwaukee. It appears from the testimony of witness Charles H. Warner, sales representative for the Altitude Petroleum Corporation, that he had received orders for these cars from appellant; that Duncan requested that shipment be made to Blue Rose Oil Company, Milwaukee, but that the Altitude Company preferred to have the cars shipped to itself, for the reason that it did not wish to divulge to the refiner who the consignee of the gasoline was, and that it shipped them to itself with the idea of later diverting them. The Altitude Petroleum Corporation has its principal office in Tulsa, Oklahoma. It does not appear from the evidence whether it has an office in Milwaukee. The two cars here involved, when they reached Chicago on the Chicago, Burlington and Quincy railroad under consignment to Milwaukee, were on January 30, 1934, diverted and delivered to the appellant company at Clyde, Illinois. Appellant company unloaded them into its tanks on February 9, 1934, some three days following receipt of the warning notice from the Secretary of State on

February 6. The evidence also shows that on January 25, 1934, the day after these cars were shipped from Overton, Texas, Duncan, of the appellant company, notified J. C. Roth, superintendent of transportation of the Chicago, Burlington and Quincy Railroad Company, by letter, to divert car NATX-3496 to the appellant company at Clyde, Illinois. On January 27, three days before the cars arrived in Chicago, A. L. Moore, the general agent of the Chicago, Burlington and Quincy Railroad Company at Tulsa, Oklahoma, by wire directed Roth, at Chicago, to divert these two cars to appellant company when they reached Illinois. It is quite clear from the evidence that when the car numbers were ascertained, (and this was within three days after they left Overton, Texas,) they were, at the request of the appellant oil company and direction of the railroad agent at Tulsa, re-consigned to appellant, to be delivered at its plant at Clyde, Illinois.

Paragraph 2 of section 20 of the Uniform Sales act (Smith's Stat. 1933, p. 2559,) provides that where goods are shipped and by the bill of lading are deliverable to the seller or his agent, the seller thereby reserves a property in the goods, but if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be in the nature of a lien, only, for the purpose of securing performance by the buyer of his obligations under the contract. Paragraph (a) of section 22 of that act provides that unless otherwise agreed, goods being shipped remain at the seller's risk until the property is transferred to the buyer, but when it is so transferred the goods are at the buyer's risk whether delivery has been made or not, except in cases of conditional sales contracts and the like.

The evidence shows that the gasoline in this case was sold f.o.b. point of shipment, which was Overton, Texas, and it follows that when, at the request of the appellant,

the railroad was notified that these cars were to be diverted to appellant's plant when they reached Chicago, the property in the gasoline was in appellant and the risk of loss was its risk, and the shipment was, in fact, to appellant. It is apparent from this record that the billing of the cars to Altitude Petroleum Corporation at Milwaukee was a mere subterfuge designed to circumvent the operation of the Motor Fuel Tax act, in which subterfuge that corporation appears to have aided, and that the appellant company, by the facts shown in this record, was transporting gasoline into this State and receiving it when so transported. It was therefore a distributor under the Motor Fuel Tax act. *People v. Allen, (ante, p. 36.)*

It is not contended that appellant paid any tax on this motor fuel, but it is, in fact, admitted by Duncan in his testimony that subsequent to the cancellation of appellant's license as a distributor it paid no tax to the State. When these cars were shipped to it it had no license as a distributor. It was contemplated in the issuance of its charter that it should obey the laws applicable to corporations of its kind. As we have observed, sub-section 1 of section 15 of the Motor Fuel Tax act declares that whoever acts as a distributor of motor fuel after July 1, 1929, without a license to do so, shall be punished by a fine or imprisonment, or both. Appellant had no license. It did act as a distributor of motor fuel. It therefore violated section 15 of the Motor Fuel Tax act and section 3 of that act, which denies the privilege of acting as a distributor without first securing a license to so act. It is clear that such violation was an abuse of the authority conferred upon it by law and brings it directly under the provisions of paragraph (c) of section 82 of the Business Corporation act, thereby rendering it liable to dissolution on information by the Attorney General, provided it so acted after having received the warning notice from the Secretary of State on February 6.

The evidence shows, without dispute, that these cars reached appellant's plant on January 30. This was before the receipt of the notice from the Secretary of State. Aside from the evidence of the representative of the Altitude Petroleum Corporation that appellant ordered motor fuel through it from without the State, in the manner indicated in this testimony, after February 6, it is clear from the evidence of appellant's employees that these cars were on February 9 unloaded into the tanks of the appellant oil company and later sold out through the gasoline pumps situated at its plant. It would be a strained construction of the language of section 1 of the Motor Fuel Tax act, defining a distributor as a person who for sale or use in this State transports motor fuel into the State or receives motor fuel transported to him from without the State, to say that the receipt of these two cars was completed before the notice of the Secretary of State was served on appellant. It was after the receipt of that notice that the gasoline was unloaded in the tanks. So far as shown by this record, up until that time the appellant may have been privileged to reject these cars. Be that as it may, the unloading of the cars on February 9 was a part of the act of receiving motor fuel transported to it from without the State, showing that appellant was then acting as a distributor without a license and was thus abusing the authority conferred upon it by law. The evidence also shows that it at that time, and later, had at its plant a sign giving the price at which gasoline was being sold at "10 plus 4," making the total cost fourteen cents per gallon. The "4" represented exactly the amount of the State and Federal taxes. A receipt was put in evidence by the People on which appellant's employee so designated that item of the sale price. On this receipt appear figures "5/1/34," indicating its date, though the employee testified that he signed it in the latter part of January. This employee also testified that the gasoline from these two cars, after being put

in appellant's tanks, was sold out through the pumps, and that appellant did not sell to wholesale distributors nor to tank wagons. This evidence, together with the price sign at appellant's plant, strongly indicates that appellant was also collecting the tax after the notice of February 6. It is evident that its act herein detailed subjected it to the penalties prescribed by section 15 of the Motor Fuel Tax act. Whether the penalty provision of that section may or may not be considered a part of the Criminal Code of the State is unnecessary to consider here, since, for the reasons stated, the appellant is shown to be subject to dissolution under section 82 of the Business Corporation act.

Counsel argue, however, that the notice of the Secretary of State served on appellant February 6 was insufficient, in that it stated that appellant was violating sub-sections 1, 2 and 3 of section 15 of the Motor Vehicle Tax act. It is evident that this was a clerical error in the notice. The notice, however, contained the following language: "Any continuance of the violation of the Motor Fuel Tax act after receipt of this notice will subject you to the full penalty of the law made and provided in section 82, subsection (c), of the Business Corporation act of the State of Illinois." Notwithstanding the error in the title of the act in the earlier part of the notice, this notice was sufficient to advise appellant of the act that was being violated. *Russell* v. *Ranson*, 76 Ill. 167.

It is also claimed that the certificate of the Secretary of State to the Attorney General was defective for the same reason. Appellant is not entitled to any advantage of an insufficiency in such a certificate as it is a notice from one State official to another, while the information in this case charges facts bringing the appellant within the purview of section 82 of the Business Corporation act. Under that act a corporation may be dissolved involuntarily by a decree of a court of equity upon information filed by the Attorney General when grounds therefor are

made to appear to the court. The action of the Attorney General did not depend, alone, on the certificate from the Secretary of State, but such certificate is to advise the Attorney General that the appellant was violating the law.

A corporation is a creature of the State. Every corporation is bound by the laws of the State, and on its failure to abide by them in a particular designated by statute is subject to dissolution. The method of dissolution may be provided by the statute. When a corporation offends against the laws of the State the violation of which is made grounds for dissolution it is thereby abusing the authority conferred on it by law. *State* v. *Standard Oil Co.* 224 U. S. 270; *People* v. *Sugar Refining Co.* 121 N. Y. 582, 22 R. C. L. 672.

Counsel for appellant argue that forfeitures are not favored in courts, and that therefore the courts should be slow to forfeit appellant's charter. The dissolution of a corporation by the sovereign body creating it is not a forfeiture in the sense in which that term is usually applied to contracts. It is a penalty exacted by the State against corporations created by it for disobeying its law. Sections 82 and 83 of the Business Corporation act are declaratory merely of the common law right of the sovereign to dissolve corporations which violate its laws. (*State* v. *Minnesota Thresher Co.* 40 Minn. 213; *State* v. *Standard Oil Co. supra; People* v. *Sugar Refining Co. supra.*) The evidence in this case shows a continued and deliberate evasion of the laws of the State governing this corporation and its activities. The decree is fully supported by the record.

It is unnecessary to consider other points raised in the briefs.

The decree of the circuit court is affirmed.

*Decree affirmed.*