(No. 23169.—

THE PEOPLE OF THE STATE OF ILLINOIS, by Otto Kerner, as Attorney General, Appellee, *vs.* UNITED MEDICAL SERVICE, INC., Appellant.

*Opinion filed February 14, 1936.*

SHANNON, MORRILL & JOHNSON, (ANGUS ROY SHAN-
NON, of counsel,) for appellant.

OTTO KERNER, Attorney General, (WILLIAM C. CLAU-SEN, and HARRY EUGENE KELLY, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Attorney General of the State of his own accord filed a verified petition in the superior court of Cook county for leave to file an information in the nature of a *quo warranto* to require United Medical Service, Inc., a domestic corporation, to show by what warrant it holds a franchise to practice medicine or any of its branches or any system of treating human ailments. The permission sought was granted, and an information containing the same allegations as the petition was filed. Thereafter the respondent moved to vacate the order and to strike the information on the ground that it was filed in violation of section 8 of the Quo Warranto act. The motion was allowed and the respondent was ordered to plead, answer or demur to the petition instead of to the information. The respondent filed nine pleas to the petition and a single replication was filed to the pleas. General and special demurrers were interposed to eight of the replications. In lieu of settling the pleadings and proceeding to a trial the parties elected to present an agreed case conformably to Rule 48 of this court and stipulated the facts. The statement of the agreed case presented to the trial court consisted of the stipulation of facts and of thirteen questions of law. After an extended hearing the court found the respondent guilty as charged and rendered judgment of ouster against it. From that judgment the respondent prosecutes this appeal.

The respondent was incorporated as a corporation for profit on December 15, 1930, with an authorized capital of 400 shares of common stock, having a par value of $100 per share. Although its statement of incorporation enumerates seven objects for which it was formed, the pursuit of only one is assailed in this case, namely, the promotion of

individual and public health through the study, prevention and treatment of disease.

The agreed statement of facts shows that in 1933 the respondent established in Chicago a clinic, designed and denominated by it as a fixed-fee, low-cost medical service, with fully equipped offices to provide for the examination and treatment of all physical and mental ailments; that since 1933 it has continuously maintained the clinic and offices, and that all medical and surgical services which the respondent offers are rendered solely by physicians and surgeons licensed and registered by the State of Illinois. It also appears that on several occasions since 1933 the respondent has published announcements of its character and purpose in the form of paid advertisements in the public press, one of which states that the corporation itself is not a charity, nor is it associated with or supported by any charity, philanthropic, educational or tax-supported organization, and affirmatively declares that it is organized for profit. Charges for specific medical services, such as examinations of the heart, the lungs, the eyes, ears, nose and throat, and four other so-called regional examinations, laboratory examinations and X-ray examinations, are set forth in the advertisement. With respect to the medical staff this advertisement announces: "All essential medical service in general health and diagnostic examinations and treatment will be rendered to patients by competent physicians trained and experienced in their respective fields of medicine and registered under the laws of the State of Illinois." Persons seeking and receiving examinations and treatments in and through the clinic enter into contracts with the respondent, and the latter receives the fees for such services and pays the physicians and surgeons in its employ their remuneration. The corporation itself has never applied for or received a license to practice medicine in Illinois.

The respondent contends that the trial court lacked jurisdiction to enter a judgment of ouster because the rec-

ord contains neither an order granting leave to file an information nor an information. The record in the present case discloses that the information filed pursuant to leave granted was stricken upon the respondent's motion, which specifically charged that the proceeding did not conform to section 8 of the Quo Warranto act. Section 1 of this statute, (Ill. State Bar. Stat. 1935, p. 2518; Smith's Stat. 1935, p. 2569;) so far as pertinent to this inquiry, provides that in case any domestic corporation exercises powers not conferred by law, the Attorney General, or State's attorney of the proper county, either of his own accord or at the instance of any individual relator, may present a petition to any court of record of competent jurisdiction for leave to file an information in the nature of a *quo warranto* in the name of the People of the State of Illinois, and that if such court shall be satisfied that there is probable ground for the proceeding it may grant the petition and order the information to be filed and process to issue. Section 8, approved July 6, 1933, (Laws of 1933, p. 856,) and in force when this action was instituted, declares that it shall be unnecessary hereafter in any action of *quo warranto* to set out the cause of action in the writ but that it shall be sufficient to summon the defendant in a summons in the usual form, commanding him to appear and answer the plaintiff in an action of *quo warranto,* and that the issue shall be made up by answering, pleading or demurring to the petition as in other cases. This section was taken from, and its language is identical with, section 15 of the Practice act of 1907 to the extent that the latter relates to *quo warranto* proceedings. (Cahill's Stat. 1931, p. 2173; Smith's Stat. 1931, p. 2194.) Section 15 was exactly the same as section 10 of the Practice act of 1872 and was in force when the Quo Warranto act was revised in 1874. The new section of the Quo Warranto act deals only with the form of summons and the manner in which the issues shall be made up. It does not conflict with any of the pre-

ceding sections of the statute but is in entire harmony therewith. *People* v. *Moeckel,* 256 Ill. 598.

The respondent, in its motion to strike the information, did not charge that probable ground for the proceeding was wanting. Following the entry of the order striking the information the respondent pleaded to the petition, which charged that by means of its corporate franchise the respondent had unlawfully usurped the franchise of engaging in the practice of medicine and in the diagnosis and treatment of the diseases of human beings as governed by the Medical Practice act. The petition and the information in this particular proceeding contain identical allegations and make the same charges. Furthermore, the parties entered into a stipulation by which they submitted an agreed case to the trial court, as provided for by the Civil Practice act and Rule 48 of this court. They expressly stated that the agreed case contained the points of law at issue between them, and that "the court shall decide thereon and shall render judgment therein, according as the rights of the said parties in law may appear." An examination of the "statement of agreed case" shows that the respondent did not raise the question of whether the filing of an information was prerequisite to the rendition of the judgment of ouster against it. While jurisdiction of the subject matter cannot be waived, the method of acquiring jurisdiction of a particular case and irregularities in respect thereto may be waived. The defendant, in a case in which the court has general jurisdiction, may dispense with process altogether, waive irregular process and appear. (*Wilson Bros.* v. *Haege,* 347 Ill. 140; *Brown* v. *VanKeuren,* 340 id. 118.) The respondent is not in a position to challenge the method of making up the issues, as it induced and acquiesced in the procedure which it now attacks.

The next contention is that sections 8, 82, 83, 84 and 85 of the Business Corporation act deprived the trial court of jurisdiction to determine the issue made up in a *quo war-*

*ranto* action under the provisions of the Quo Warranto act. Section 148 of the Corporation act in effect prior to July 13, 1933, (Cahill's Stat. 1931, p. 756; Smith's Stat. 1931, p. 767;) provided that when any domestic corporation, under color of any of the powers granted by the statute, committed any act in excess of such powers, such act should be voidable at the instance of the Attorney General, in a direct proceeding in the nature of a *quo warranto* instituted by him against the offending corportion. Section 1 of the Quo Warranto act was also in force, and provided, among other things, that when any domestic corporation (1) did or omitted any act which amounted to a surrender or forfeiture of its rights and privileges as a corporation, or (2) exercised powers not conferred by law, the Attorney General, or State's attorney of the proper county, either of his own accord or at the instance of any individual relator, should commence *quo warranto* proceedings. By section 6 it was further provided that if the corporation should be deemed guilty the court might give judgment of ouster against the corporation from the franchise. The section also provided that instead of judgment of ouster from a franchise for an abuse thereof, unless the court is of the opinion that the public good demands such judgment, the court may fine the corporation found guilty in any sum not exceeding $25,000 for each offense.

The Business Corporation act effective July 13, 1933, expressly repealed the Corporation act of 1919 as amended. The new Corporation law contains no provision for a *quo warranto* action, nor does it purport to repeal the portion of section 1 of the Quo Warranto act under which this action was brought. The respondent argues, however, that since the Business Corporation act is complete in itself, governing the whole field of corporations for profit, and expressly repealing the Corporation act of 1919, it also repealed, by implication, all other existing statutes to the extent that they were inconsistent with the latter statute. Specifically,

the respondent asserts that section 1 of the Quo Warranto act, to the extent that it provides a remedy in an action of *quo warranto* for the exercise of powers not conferred by law, has been abrogated by sections 8, 82, 83, 84 and 85 of the Business Corporation act. Section 8 (Ill. State Bar Stat. 1935, p. 850; Smith's Stat. 1935, p. 809;) relates to the defense of *ultra vires*. It provides, in part, that no limitation upon the business, purposes or powers of a corporation shall be asserted in order to defeat any action at law or in equity between the corporation and a third person, or between a shareholder and a third person, involving any contract to which the corporation is a party, or any right of property or any alleged liability of whatsoever nature, but such limitation may be asserted, "(c) in a proceeding by the State, as provided in this act, to dissolve the corporation, or in a proceeding by the State to enjoin the corporation from the transaction of unauthorized business." Subdivision (c) of section 8 refers to and is controlled and limited by the qualifying language set forth. The remedy by injunction to restrain the corporation from the transaction of unauthorized business is not applicable, because the present case is not one "at law or in equity between the corporation and a third person or between a shareholder and a third person involving any contract to which the corporation is a party or any right of property or any alleged liability of whatsoever nature." Recourse to sections 82, 83, 84 and 85 of the Business Corporation act cannot avail the respondent, as those sections purport to relate solely to, and by their express provisions deal with, involuntary dissolution and receivership. Section 82 provides, in part, that a corporation may be dissolved involuntarily by a decree of a court of equity, upon information filed by the Attorney General, when it is made to appear to the court that "(c) the corporation has continued to exceed or abuse the authority conferred upon it by law, or has continued to violate any section or sections of the Criminal

Code of the State of Illinois after a written demand to discontinue the same shall have been delivered by the Secretary of State to such corporation." Sections 82 and 83 are declaratory of the common law right of the sovereign to dissolve corporations which violate its laws. (*People* v. *Blue Rose Oil Co.* 360 Ill. 397.) The relator concedes that the respondent is lawfully empowered to pursue some of its expressed objects, and this action is directed against only one of its activities, namely, the treatment of disease as a business, for monetary gain. The Attorney General does not seek to dissolve the corporation nor to place it in receivership. The facts do not bring the case within the contemplation of the express provisions of the Business Corporation act.

In support of its contention the respondent, however, invokes the familiar canon of statutory construction, that the revision of a subject by a later statute evinces a legislative intention to substitute its provisions for the earlier law upon the same subject. (*People* v. *Gould,* 345 Ill. 288; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 id. 425.) It is equally well established that the repeal of laws by implication is not favored, and it is only where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law will prevail and the earlier one be considered repealed by implication. (*People* v. *West Englewood Bank,* 353 Ill. 451; *Galpin* v. *City of Chicago,* 249 id. 554.) Where two statutes successively enacted, with relation to the same subject, are seemingly repugnant, it is the duty of the courts so to construe them, if possible, that the subsequent act will not repeal the antecedent one by implication, and, if two constructions are possible, that one will be adopted which operates to support rather than to repeal the earlier act by implication. *Walgreen Co.* v. *Industrial Com.* 323 Ill. 194; *Village of Glencoe* v. *Hurford,* 317 id. 203; *People* v. *Burke,* 313 id. 576.

It may be conceded, as the respondent insists, that sections 82, 83, 84 and 85 of the Business Corporation act of 1933 are the counterpart, among others, of section 148 of the earlier act. This concession, however, cannot avail the respondent, for it does not follow that section 1 of the Quo Warranto act, concerned, in part, with the corporate exercise of powers unlawfully conferred, is superseded by the sections of the Business Corporation act which provide for the involuntary dissolution and receivership of corporations by informations in equity. There is no inconsistency or repugnance in the language of the statutes, since the Quo Warranto act expressly provides for *quo warranto* proceedings where a corporation exercises powers not conferred by law. This the Business Corporation act does not prescribe. Had the General Assembly intended to repeal any part of section 1 of the Quo Warranto act it would undoubtedly have employed appropriate language to accomplish that purpose.

Complaint is made that the legal remedy of *quo warranto* was not available to the Attorney General in this cause because adequate remedies obtain under the general equity powers of the courts and under the express provisions of the Medical Practice act. Upon the basis of the agreed facts the relator maintains that the respondent corporation is engaged in the treatment of disease for profit— a power not conferred upon it by law. It is true that one of the corporate objects found in the certificate of incorporation is the prevention and treatment of disease for profit. Whether the certificate of incorporation, however, confers such rights and powers as are authorized is a matter for judicial determination. When a corporation for profit is formed under the general act, the law, and not the statement or the certificate, must determine what powers can be exercised. (*People* v. *Chicago Gas Trust Co.* 130 Ill. 268.) The relator charges in the present case that there has been a usurpation or unlawful assumption of a

franchise by the respondent. A corporate franchise proceeds from the sovereign power, and the people have the right at all times to inquire into the title by which such a franchise is claimed or exercised and to have a judgment of ouster if the franchise was improperly granted. (*People* v. *Larsen,* 265 Ill. 406.) The only relief sought and obtained in this case was the ouster of the corporation from the assumption and usurpation of a franchise charged to have been improperly granted to it. This improper grant of power is being used, it is charged, in violation of the Medical Practice act. *Quo warranto* therefore properly lies. High on Extraordinary Remedies, (3d ed.) sec. 627; 22 R. C. L. p. 682; *People* v. *Ridgley,* 21 Ill. 65.

It is also claimed that the provisions of the Medical Practice act afford a proper remedy for prosecuting the respondent. Section 24 of the statute (Ill. State Bar. Stat. 1935, p. 2055; Smith's Stat. 1935, p. 2047;) provides: "If any person shall hold himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings; * * * and shall not then possess in full force and virtue a valid license issued by the authority of this State to practice the treatment of human ailments in any manner, *he* shall be guilty of a misdemeanor," and subject to punishment by fine of not less than $100 nor more than $500, or by confinement in the county jail for not more than one year, or both fine and imprisonment, in the discretion of the court. From the express language of the statute it is apparent that the penalties prescribed are directed against individuals practicing medicine without licenses. The punishment by incarceration provided by the Medical Practice act is not applicable to corporations practicing medicine and is obviously directed against individuals. Under the statute the maximum fine fixed for a violation of the provisions against practicing medicine without a license is $500. If section 24 applies to both corporations and individuals the only method of punishing a cor-

poration is by fine. On the other hand, when a judgment is entered under the Quo Warranto act for the exercise of power illegally granted it is that of ouster, or, in the discretion of the court, a maximum fine of $25,000. Under the circumstances of this case it is clear that section 24 of the Medical Practice act does not afford an adequate remedy and would not prevent recurrences of the unlawful. exercise of a power improperly conferred upon corporations such as the respondent. Furthermore, the present proceeding is not a criminal proceeding and criminal conduct is not charged. While a proceeding by information in the nature of a *quo warranto* is a substitute for the ancient writ and retains the character of a criminal prosecution to the extent that the proceeding is in the name of the people and criminal in form, it is a civil remedy calling upon the defendant to show by what warrant a franchise or privilege is exercised. (*People* v. *Barber*, 289 Ill. 556; *People* v. *Drainage Comrs.* 282 id. 514; *Independent Medical College* v. *People*, 182 id. 274.) The precise question presented here, whether a corporation may lawfully engage in the practice or treatment of human ailments and the treatment of disease as a business, is not a criminal question.

The respondent next contends that since section 2 of the Medical Practice act does not state what act or acts may be regarded as constituting the practice of a system or method of treating human ailments, jurisdiction to render the judgment of ouster was wanting. The title of the statute is, "An act to revise the law in relation to the practice of the treatment of human ailments for the better protection of the public health and to prescribe penalties for the violation hereof." Section 2 provides that no unlicensed person shall practice medicine or any of its branches, or midwifery, or any system or method of treating human ailments without the use of drugs or medicines and without operative surgery. The third section prohibits the issuance of a license to any person unless he passes an examina-

tion of his qualifications therefor by and satisfactory to the Department of Registration and Education. The next section declares that each applicant for such examination shall, among other things, submit evidence under oath satisfactory to the department that he has attained the age of twenty-one years, that he is of good moral character, and that he has the preliminary and professional education required by the Medical Practice act. Section 5 fixes minimum standards of professional education to be enforced by the department in conducting examinations and issuing licenses. Section 24 specifically prohibits the performance of certain acts unless a license has been issued, namely, the diagnosis and treatment of ailments of human beings; the prescription of a form of treatment for the palliation of physical ailments of persons with the intention of receiving compensation therefor; and the maintenance of an office for the examination and treatment of persons afflicted or supposed to be afflicted by any ailment.

The title of the Medical Practice act is broad enough to include not only the practice of medicine in all its branches but also the limited treatment of human ailments without drugs or medicine. The legislative intent manifest from a view of the entire law is that only individuals may obtain a license thereunder. No corporation can meet the requirements of the statute essential to the issuance of a license. From the stipulated facts it appears that the respondent has been engaged in the pursuit of activities which under section 24 it could not pursue without a license. It is clear that the respondent, owing to its corporate character, can not obtain a license to engage in the practice of medicine. The mere fact that in a criminal prosecution of an individual for a violation of the Medical Practice act it is necessary to specifically charge in the indictment the act or acts which compose the offense of practicing a system or method of treating human ailments without a license (*People* v. *Brown,* 336 Ill. 257,) cannot avail the respondent in

this case as it is not charged with the commission of a criminal offense. Whether the statute expressly defines what constitutes the practice of a system or method of treating human ailments is therefore immaterial in the present proceeding.

The respondent corporation earnestly contends that the ownership of a clinic, with offices where the treatment of disease is engaged in solely by licensed and registered physicians and surgeons who are employed by the corporation which receives the fee charged the patients, does not constitute the practice of medicine by the corporation. The respondent argues that the fact that the contract of payment for the medical services to be rendered is made between the corporation and the patient does not change the professional relationship between the patient and the various licensed and registered practitioners who treat him in the corporation's office. To support its contention the respondent places reliance upon *State* v. *Brown,* 37 Wash. 97, in which the statute attacked required an examination and license in order to "own, * * * run or manage" a dental office. The decision that this statute was void, and also the decisions in *State Electro-Medical Institute* v. *Platner,* 74 Neb. 23, and *State Electro-Medical Institute* v. *State,* 74 id. 40, cited by the respondent, are contrary not only to the views of this court expressed in *Winberry* v. *Hallihan,* 361 Ill. 121, *Dr. Allison, Dentist,* v. *Allison,* 360 id. 638, and *People* v. *Peoples Stock Yards Bank,* 344 id. 462, but also to the weight of authority. (*People* v. *Woodbury Dermatological Institute,* 192 N. Y. 454; *State* v. *Bailey Dental Co.* 211 Iowa, 781; *People* v. *Painless Parker, Dentist,* 85 Colo. 304; *Parker* v. *Board of Dental Examiners,* 216 Cal. 285.) In the recent case of *Dr. Allison, Dentist,* v. *Allison, supra,* this court observed that the practice of a profession is subject to licensing and regulation and is not subject to commercialization or exploitation. "To practice a profession," the court said, "requires something more

than the financial ability to hire competent persons to do the actual work. It can be done only by a duly qualified human being, and to qualify something more than mere knowledge or skill is essential. * * * No corporation can qualify."

Our attention is directed to the fact that no provision of the Business Corporation act, or of any other statute of this State, prohibits a corporation organized for profit from rendering any and all medical services by duly licensed and registered physicians and surgeons. The misuse of power sought to be coerced in this case is a right and privilege which individuals, only, may obtain by compliance with the provisions of the Medical Practice act. It is true that both section 2 of the Corporation act of 1919 as amended and section 3 of the Business Corporation act provide, with certain named exceptions not material in this case, that corporations for profit may be organized for any lawful purpose. Manifestly, the Business Corporation act, in authorizing the formation of corporations for "any lawful purpose," does not purport to include the practice of the learned professions, such as medicine and law.

The final contention of the respondent corporation which requires consideration is, that in so far as the Medical Practice act prohibits it from practicing medicine by employing licensed physicians and surgeons to that end, the act is an unreasonable exercise of the police power and transcends the due process of law clauses of sections 2 and 14 of article 2 of the constitution of this State and the first section of the fourteenth amendment to the Federal constitution. The police power of the State includes the power to enact comprehensive, detailed and rigid regulations for the practice of medicine, surgery and dentistry. (*Douglas* v. *Noble,* 261 U. S. 165; *Dent* v. *West Virginia,* 129 id. 114; *People* v. *Witte,* 315 Ill. 282.) There is no right to practice medicine which is not subordinate to the police power. (*Lambert* v. *Yellowley,* 272 U. S. 581; *People* v. *Walsh,*

346 Ill. 52.) The Medical Practice act of 1923 recognizes the different methods of treating human ailments and prescribes reasonable and uniform regulations for testing the qualifications of persons who desire to practice medicine in all its branches and persons who desire to practice some limited form of treating human ailments. *People* v. *Walder*, 317 Ill. 524; *People* v. *Witte, supra.*

Reliance is placed, however, on *Liggett Co.* v. *Baldridge,* 278 U. S. 105, a case involving the validity of a statute of the commonwealth of Pennsylvania which provided that every pharmacy or drug store should be owned only by a licensed pharmacist, and that no corporation, association or co-partnership should own one unless all the members or partners were licensed pharmacists. The State Board of Pharmacy refused to grant the Liggett Company a permit to carry on its business on the ground that all of the stockholders of the corporation were not pharmacists. It appears that the corporation was conducting an ordinary business—namely, the operation of a drug store—and that it neither engaged in nor assumed to practice a profession. The United States Supreme Court, in holding the act invalid, observed that mere stock ownership in a corporation owning and operating a drug store could have no real or substantial relation to the public health, and that the statute was, accordingly, an unreasonable and unnecessary restriction upon private business. The Pennsylvania act did not purport to deal with the requirements for engaging in a profession. It does not follow that because a person may have a constitutional property right to operate a drug store he has a like absolute right to engage in the practice of professions such as medicine, dentistry or law. Neither a natural person nor an intangible entity can complain if unable to fulfill the requirements reasonably prerequisite to obtaining a license to engage in a particular profession. Manifestly, the case of *Liggett Co.* v. *Baldridge, supra,* is not parallel with the case at bar. We find nothing in that

case which conflicts with the well-established rule that the State may deny to corporations the right to practice professions and insist upon the personal obligations of individual practitioners. *Semler* v. *Dental Examiners,* 294 U. S. 608; *Winberry* v. *Hallihan, supra; People* v. *Peoples Stock Yards Bank, supra; People* v. *Painless Parker, Dentist, supra; Parker* v. *Board of Dental Examiners, supra.*

The judgment of the superior court is right, and it is therefore affirmed.

*Judgment affirmed.*