

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**TTORNEY GENERAL**

October 16, 1957

Dr. M. H. Crabb, M.D.                Opinion No. WW-278.
Secretary,
Texas State Board of                 Re: Corporation practice in
  Medical Examiners,                      medicine.
Fort Worth 2, Texas

Dear Dr. Crabb:

You have requested an opinion on the following questions:

"1.  Is a physician subject to having his license forfeited under Article 4505, Section 12, if he accepts employment by a corporation on a salary or commission basis, and the corporation charges for the services that he performs?

"2.  In a situation such as is described above, would the corporation be considered as being engaged in the unlawful practice of medicine?"

These questions have arisen by virtue of a letter received by your office from an individual licensed to practice medicine in this State, in which he states:

"I would specifically like to know if there is a Texas law under which a doctor forfeits his license if he is employed, either on a salary or commission, by an accredited hospital in which the hospital collects the fees for the personal services of this physician."

Subdivision 12 of Article 4505, Vernon's Civil Statutes, prohibits the "permitting or allowing another to use his license or certificate to practice medicine in this State for the purpose of treating or offering to treat sick, injured or afflicted human beings", and such conduct is made a ground for the suspension and revocation or cancellation of his license to practice medicine by the provisions of Article 4506, Vernon's Civil Statutes.

Dr. M. H. Crabb, Page 2 (WW-278 ).

In construing these provisions, it was held in F.W.B. Rockett, M.D. vs. State Board of Medical Examiners, 287 S.W. 2d 190 (Tex. Civ. App., 1956, n.r.e.):

". . . By the pleadings of appellant, his testimony, and the stipulations of the parties, it was conclusively established that: Appellant was employed by Thomas Clinic for a salary of $500 per month and he received no fees; the Clinic was owned by Ralph C. Thomas, who was not a medical doctor and no medical doctor owned any interest in the clinic; appellant performed medical services for the clinic and the fees for such services were collected by the clinic. Such conduct on the part of appellant was in effect 'permitting, or allowing, another to use his license or certificate to practice medicine in this State, for the purpose of treating, or offering to treat, sick, injured, or afflicted human beings', which conduct is prohibited by the provisions of Section 12 of Art. 4505, Vernon's Ann. Civ. Stats., and is made a ground for the forfeiture of a license to practice medicine by the provisions of Art. 4506, Vernon's Ann. Civ. Stats. See Section 5, Art. 4505."

In Kee vs. Baber, ____ Tex. ____, 303 S.W. 2d 376, the Supreme Court of Texas had before it the validity of a corporate practice rule adopted by the Board of Examiners in Optometry, which rule states "that an optometrist who practices optometry on the premises of a mercantile establishment should observe certain specified conditions regarding the separation of his practice from the business operations of the mercantile establishment, and that proof of noncompliance with any of these conditions will be considered prima facie evidence that the optometrist has placed his license at the disposal or in the service of an unlicensed person in violation of Article 4563(1)".

Subdivision (1) of Article 4563, Vernon's Civil Statutes, referred to in the corporate practice rule above quoted, provides:

"'(1) That said licensee lends, leases, rents or in any manner places his license at the disposal or in the service of any person not licensed to practice optometry in this State.'"

In sustaining the corporate practice rule, it was held:

"The third rule attacked—'the corporate practice rule'—has for its stated purpose among other things the safeguarding of the optometrist-patient relationship and the effective implementation of the Legislature's prohibition against placing an optometrist's license 'in the service or at the disposal of unlicensed persons. . . .'

". . .

"The rule does not say that an optometrist cannot lease office space from a business or mercantile 'establishment', but seeks to control the relationships between the optometrist and his lessor to the extent that confusion on the part of the public will not arise and the optometrist-patient relationships will not be endangered. This end is sought to be accomplished by means of a presumption which an optometrist may rebut if despite his violation of the rule, he can show that he has not placed his license 'at the disposal or in the service of any person not licensed to practice optometry.' Cf. Rockett v. Texas State Board of Medical Examiners, Tex. Civ. App., 287 S.W. 2d 190, wr. ref. n.r.e. . . ."

In United States vs. American Medical Association, 110 F. 2d 703, 714 (D.C.Cir. 1940, cert. den.) relied on by the Court in F.W.B. Rockett vs. State Board of Medical Examiners, supra, it was held:

"The practice of medicine in the District of Columbia is subject to licensing and regulation and, we think, may not lawfully be subjected 'to commercialization or exploitation'. As was well said in People v. United Medical Service, 362 Ill. 442, 200 N.E. 157, 163, 103 A.L.R. 1229, the practice of medicine requires something more than the financial ability to hire competent persons to do the actual work. And so it has been held under varying conditions, speaking generally, that where a corporation operates a clinic or hospital, employs

> licensed physicians and surgeons to
> treat patients, and itself receives
> the fee, the corporation is unlaw-
> fully engaged in the practice of medi-
> cine. This is true because it has
> been universally held that a corpora-
> tion as such lacks the qualifications
> necessary for a license, and without
> a license, its activities become
> illegal. It has also been said that
> the relationship of doctor and patient,
> well recognized in the law, would be
> destroyed by such an arrangement."
> (Emphasis ours).

In view of the foregoing, you are advised that when-
ever a corporation employs a licensed physician to treat
patients and itself receives the fee, the corporation is
unlawfully engaged in the practice of medicine and the licensed
physician so employed is violating the provisions of Subdivi-
sion 12, of Article 4505, Vernon's Civil Statutes, and is sub-
ject to having his license to practice medicine in this State
canceled, revoked, or suspended by the Texas State Board of
Medical Examiners.

## SUMMARY

Whenever a corporation employs
a licensed physician to treat patients
and itself receives the fee, the
corporation is unlawfully engaged in
the practice of medicine and the
licensed physician so employed is
violating the provisions of Subdivi-
sion 12, of Article 4505, Vernon's

Civil Statutes, and is subject
to having his license to practice
medicine in this State canceled,
revoked, or suspended by the
Texas State Board of Medical
Examiners.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *John Reeves*
John Reeves
Assistant

JR:wam:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

J. C. Davis, Jr.

Ralph R. Rash

Morgan Nesbitt

Houghton Brownlee, Jr.

E. M. DeGeurin

REVIEWED FOR THE ATTORNEY GENERAL

By:  James N. Ludlum.