(Nos. 21850-59 incl.—)

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE WEST ENGLEWOOD TRUST AND SAVINGS BANK *et al.*—(JOSEPH B. McDONOUGH, County Treasurer, Appellee, *vs.* IRWIN T. GILRUTH, Receiver, *et al.* Appellants.)

*Opinion filed October 21, 1933.*

452

KIRKLAND, FLEMING, GREEN & MARTIN, and ARTHUR ABRAHAM, (WEYMOUTH KIRKLAND, JOSEPH B. FLEMING, ADRIAN L. HOOVER, and DUDLEY F. JESSOPP, of counsel,) for appellants.

THOMAS D. NASH, (MICHAEL J. AHERN, and MARTIN J. McNALLY, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The consolidated cases involve ten actions instituted by the People of the State of Illinois, on the relation of Oscar Nelson, as Auditor of Public Accounts, to wind up the affairs of the State banks referred to as the Bain banks, of which appellant Irwin T. Gilruth is receiver. Appellee, Joseph B. McDonough, as county treasurer and *ex-officio* collector of taxes of Cook county, filed an intervening petition in each cause, asking that the claim filed by him as such official should have priority or preference in payment because his claim is for undistributed tax money. Appropriate pleadings were filed by the respective parties, and it was stipulated that since the facts involved are substantially the same in each case except as to amounts, hearing would be had only in what is known as the West Englewood Trust and Savings Bank case and that the certificate of evidence therein should be taken and considered as having been filed in each of the others, and that they should be considered upon the complete record as in case No. 21850, the West Englewood Trust and Savings Bank case. After a hearing in that case was completed the court entered a decree in each case finding that the claim of the county treasurer and *ex-officio* collector (herein referred to as the petitioner) is a preferred claim, and ordered it be paid in preference to and priority of payment over all other creditors of the

bank, including preferred and trust fund claimants. From these decrees appeals have been prosecuted and the causes consolidated.

The amount due the petitioner from the West Englewood Trust and Savings Bank on the day it closed was $235,683.23. The amount of cash on hand in the bank and due from correspondent banks was $53,404.59. The decree directed the receiver to pay the whole amount of the cash to the petitioner and to pay the balance of his claim from moneys realized from the collection and liquidation of all further assets of the bank which should come into the possession of the receiver, in preference and prior to any other payments or distributions to the creditors of the bank, including other preferred or trust fund claimants.

The intervening petition as amended alleged that the bank was appointed a deputy collector and was directed to hold the tax moneys collected as trust funds and to remit the same to the petitioner; that such moneys were to be collected for remittance, only, and not for deposit; that the moneys were not deposited in a general checking account; that they were in the possession of the bank and were held as a trust fund and not in a general deposit account when the bank closed; that no part of the moneys claimed had been distributed by the petitioner to any of the corporate bodies entitled thereto and were therefore the property of the State.

The receiver and the Stock Yards Bank and Trust Company, administrator of the estate of Charles Haas, deceased, filed sworn answers to the intervening petition, answer under oath not having been waived. It is claimed by them that these answers have not been overcome by the testimony of two witnesses or the equivalent thereto, and therefore the answers must be taken as true. This contention is unavailing, because the answers were verified upon information and belief only. (*Deimel* v. *Brown,* 136 Ill. 586.) The answer of the receiver denied that the bank

was directed to hold the money as trust funds and for remittance only. It alleged that the bank was directed to deposit the money received by it in an account opened in its books known as "Jos. B. McDonough, county collector; sub-station account," and in compliance therewith did deposit the money in a checking account. It denied that the money was undistributed tax money and alleged that distribution had taken place, and that the money remaining in the bank was the property of the county treasurer of Cook county and not the property of the People of the State of Illinois. It further alleged that claims for preference have been filed against the estate of the bank for more than a million dollars, a large number of which claims were still unadjudicated. It denied that the petitioner was entitled to priority of payment out of any of the assets of the bank.

The answer of the trust company contained substantially the same allegations and denials as the receiver's answer. In addition thereto it alleged that the bank, at the time it closed, held the sum of $18,368.41 as executor of the will of Charles Haas, deceased, which sum constituted a trust fund, and that it is traceable into the assets of the bank which came to the possession of the receiver, and that a claim therefor is entitled to priority of payment over that of the petitioner. Considerable proof, both oral and documentary, was taken by the respective parties concerning instructions from the petitioner to the bank as to the method of making deposits in and remittances by the bank. No useful purpose can be served by setting out this proof in detail. It is sufficient to say that we have reached the conclusion that the moneys constituted a general deposit in the bank to the credit of the petitioner.

It is conceded by counsel for all parties that under the common law the State is entitled to the prerogative of prior payment of its claim against an insolvent bank for undistributed tax moneys, and it is admitted by counsel for ap-

pellants that under the doctrine laid down in *People* v. *Farmers State Bank,* 335 Ill. 617, if the petitioner is entitled to preference on account of a trust relationship he may avail himself of the cash funds on hand at the time the bank was closed, and that he is not limited to the cash actually in the bank but may resort also to moneys due from correspondent banks.

It is the contention of appellants that the common law right of the State to prior payment of its claims for undistributed tax moneys has been abandoned and abrogated by the enactment of the County Treasurer act relative to counties having a population of more than 150,000. (Cahill's Stat. 1933, p. 903.) This act was approved in 1915 and subsequently amended in 1925. Cook county and St. Clair county are the only counties in Illinois which come within the purview of that statute. The act provides that the county treasurer shall advertise for bids from all regularly established national and State banks doing business within his county for interest on county moneys to be deposited in said banks; that all bids shall be referred to the county treasurer, county clerk and the president or chairman of the county board of such county, who shall have power, by a majority vote, to reject any or all bids or to designate as many depositaries as they deem necessary for the protection of all county moneys and make awards accordingly; that each bank so designated shall enter into a contract with the county·treasurer for the deposit of moneys and shall give a bond to the People of the State of Illinois to secure the re-payment of deposits. The act is mandatory upon the county treasurer and contemplates a deposit of all tax moneys collected by him in designated banks.

Whether a depositary act, such as the so-called County Treasurer act, effects a repeal or abrogation of the common law prerogative of the State is a question which has been before the courts in a number of jurisdictions in the country but has not been previously presented to this court.

While a few courts have held that the prerogative does not exist by reason of the adoption of the common law of England as a part of the law of a State, the overwhelming weight of judicial opinion is that it does exist, with all its force and vigor, so far as it concerns the right of the people to a priority of payment of debts due them. This court has repeatedly held that the people of this State have succeeded to all the prerogatives of the sovereign as to such debts. Under the common law of England one of the prerogatives of the sovereign was the right to have debts due him by an insolvent person paid in preference to the rights of creditors whose claims were not secured by valid liens. This right of priority is a prerogative of the crown well known to the common law. It is founded not so much on any personal advantage to the sovereign as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens and discharge the public debts. (*United States* v. *State Bank of North Carolina,* 6 Pet. 29, 8 L. ed. 308.) The crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor or had been placed in the possession of a third person or was *in custodia legis.* (*Marshall* v. *New York,* 254 U. S. 380.) That this doctrine has been adopted and accepted as suitable to the system of government of Illinois is definitely settled. (*People* v. *Farmers State Bank, supra; People* v. *Bank of Chebanse,* 340 Ill. 124.) Therefore, unless it shall be held that the common law prerogative referred to has been repealed or abandoned, the right of priority in payment of the State's claim for undistributed taxes must be maintained.

In several States of the Union, including Texas, (*Shaw* v. *Fidelity and Guaranty Co.* 48 S. W. (2d.) 974;) Arkansas, (*Maryland Casualty Co.* v. *Rainwater,* 173 Ark. 103;) Utah, (*National Surety Co.* v. *Pixton,* 60 Utah, 289;)

Wyoming, (*National Surety Co.* v. *Morris,* 34 Wyo. 134;)
Missouri, (*In re Holland Banking Co.* 281 S. W. (Mo.)
702;) Arizona, (*In re Central Bank of Wilcox,* 205 Pac.
915,) and Colorado, (*Fidelity and Guaranty Co.* v. *Mc-
Ferson,* 241 Pac. (Colo.) 728,) the courts have held that
the enactment of a depositary law abrogates the State's
prerogative to prior payment. The reasons assigned by
these courts are varied and are not altogether harmonious.
The reason most frequently given is that such an act is
indicative of an intent of the legislature to no longer rely
upon the prerogative as security for the public funds but
has elected to adopt other means to protect them. (*Shaw*
v. *Fidelity and Guaranty Co. supra.*) Other grounds given
as a basis for the doctrine of abrogation are, that the equi-
ties of the citizen depositor are greater than those of the
public; (*National Surety Co.* v. *Morris, supra;*) that the
requirement of security avoids the necessity of the preroga-
tive; (*In re Holland Banking Co. supra;*) that the exac-
tion of interest makes the State a business agent and de-
stroys the right of preference; (*Maryland Casualty Co.* v.
*Rainwater, supra;*) and that taking over the assets of a
closed bank by a receiver defeats the right. (*Commissioner
of Banking* v. *Chelsea Savings Bank,* 161 Mich. 691; *State*
v. *Williams,* 101 Md. 529.) Of course, if a depositary law
discloses an apparent legislative intent to abrogate the com-
mon law prerogative the right no longer exists, but how
that intent must be shown is not dealt with in any of the
cases heretofore cited. We will give that subject our at-
tention later in this opinion. The theory that the equities
of the citizen depositor in a closed bank are greater than
those of the public is one to which we cannot subscribe.
It is obnoxious not only to the rule of common law as
declared by the Supreme Court of the United States in
*Marshall* v. *New York, supra,* and *United States* v. *State
Bank of North Carolina, supra,* but also to the tenets of
the founders of the American government and of the sev-

eral States. At common law the right of preference extended to every character of debt due the sovereign. The rule was not invoked to give him any personal advantage. It was based upon the higher motive of public policy as being essential to obtain revenues to sustain the government. Conditions in the American States present no different situation. Orderly government cannot be maintained without adequate revenues, and it seems that the right to protect them without dissipation or loss ought to be the undoubted prerogative of the people unless and until it shall have been clearly and intentionally surrendered. It is a wholesome right, which should receive sanction and approbation.

In *Maryland Casualty Co.* v. *Rainwater, supra,* it was held that the common law was abrogated, not expressly but by implication, because the statute authorized the State to engage in the ordinary business of depositing money and accepting security for its re-payment. The court, quoting from *Calloway* v. *Cossart,* 45 Ark. 88, stated that "when a State steps down into the arena of common business in concert or in competition with her citizens she goes divested of her sovereignty." This rule is applicable only when the State intentionally forsakes its functions as a sovereign and engages in the endeavors of the citizens for profit. In such a case it is to be treated as a citizen rather than a sovereign. The conservation of funds, when collected, is a matter of deep concern. In Cook county the warrant to the county collector for the collection of the 1931 taxes was for more than $230,000,000. Banks with adequate facilities for safeguarding public moneys have been uniformly resorted to and the payment of interest on deposits has become an established practice. Where interest has been paid upon deposits of public funds, either prior to or since the enactment of the County Treasurer act, its collection is considered but an incident to the safekeeping and protection of the funds themselves. The primary purpose of such deposits is to safeguard the money. The interest obtained is an

incidental result. (*Maryland Casualty Co.* v. *McConnell,* 257 S. W. (Tenn.) 410.) The State does not become a money lender by such transaction. *State Bank of Commerce* v. *United States Fidelity and Guaranty Co.* 28 S. W. (2d) (Tex.) 184.

As to the decisions in other jurisdictions that the taking over of the assets of a closed bank by a receiver prevents an enforcement of the State's prerogative, this court has already taken a contrary view. In *People* v. *Marion Trust and Savings Bank,* 347 Ill. 445, we held that the preference of the State to undistributed tax money on deposit in an insolvent bank was not lost by the appointment of a receiver, and it was further stated that the rule recognizing the State's right to preference "has reference to the public good and should receive no strict or narrow interpretation." Citing *Denver* v. *Stenger,* 295 Fed. 809.

The act of the General Assembly (Cahill's Stat. 1933, chap. 28, sec. 1,) which declares that the common law of England as it existed prior to the fourth year of James I (with certain exceptions) shall be the rule of decision in this State expressly provides that it shall be considered as in full force until repealed by legislative authority. Wherever a depositary law in another jurisdiction has been held to have repealed or abrogated the common law prerogative concerning preferential payment of debts due the sovereign, it was said that the repeal was by implication. Repeal of laws by implication is not favored. This is a general proposition which is applicable to all laws, and it is only where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former be considered repealed by implication. (*People* v. *Burke,* 313 Ill. 576.) It is not enough to justify the inference of repeal of a prior statute that a subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy. (*Kizer* v. *City of Mat-*

*toon,* 332 Ill. 545.) In the present case it 'seems to us that inasmuch as all authorities agree that the primary purpose of a depositary law is to safeguard the revenues, it is better to say that the law was intended to supplement or add to the security furnished by the rule of the common law than to say that it is repugnant to that rule. Repeal of laws by implication is even less favored when they affect the sovereign than when they affect the citizen. We know of no case in which this topic is directly treated which does not hold that laws affecting the rights of a sovereign cannot be abrogated except by express provisions of a statute. It is a maxim of the common law that "the king is not bound by any statute if he be not expressly named to be so bound." Words of the statute applying to private rights do not affect those of the State. In *Dollar Savings Bank* v. *United States,* 86 U. S. 227, the Supreme Court of the United States, after referring to the above maxim, said: "The rule thus settled respecting the British crown is equally applicable to this government, and it has been applied frequently in the different States." This court has recently declared in respect to the sovereign right of preference that there was no purpose desirable to the State to relinquish such a valuable right, and it is well settled that the rights of a sovereign are never impaired by a legislative enactment unless such an intent is expressly declared in the statute. (*People* v. *Waukegan State Bank,* 351 Ill. 548.) The depositary act of Illinois contains no express waiver of the State's preference right. It contains no provision which is inconsistent with the common law rule, but, on the contrary, it is ominously silent concerning repeal. Its provisions for the protection of the public revenues are entirely compatible with the common law rule. No reason appears why this salient rule of protection of the public's interest should be discarded in order to subserve to a greater degree the interests of private individuals. The common law rule has been in vogue in this State since 1818. The

legislative branch of the government has fully understood it, and it is incredible that it would entertain a desire to abandon the preferential right of the State without expressly declaring it. We do not hesitate to say that if the policy of granting the people such a preference is not adapted to present conditions it is within the province of the legislature to repeal it but it is not within the power of the courts to revoke it. It is a general principle that the government is not prohibited from adopting any remedies known to the law for the recovery of its debt. A prohibition contained in the law, if any, either express or implied, is for others—not for the government. (*Dollar Savings Bank* v. *United States, supra.*) If the legislature intended that a time-honored method of protecting the public revenues should be discarded we think it would have expressly said so. The views herein expressed coincide with those announced in the following cases: *Booth* v. *State,* 131 Ga. 750; *Rankin* v. *State Bank,* 68 Mont. 342; *Maryland Casualty Co.* v. *McConnell,* 148 Tenn. 656; *United States Fidelity and Guaranty Co.* v. *Central Trust Co.* 95 W. Va. 121; *United States Fidelity and Guaranty Co.* v. *Bramwell,* 108 Ore. 261; *American Bonding Co.* v. *Reynolds,* 203 Fed. (D. C.) 356; *In re Carnegie Trust Co.* 206 N. Y. 390, 99 N. E. 1096. We hold that the common law prerogative was not abrogated by the enactment of the County Treasurer act.

Appellants contend that the balance to the credit of the petitioner at the time the bank closed was not undistributed tax money. It is conceded that the general taxes collected by the bank from tax-payers were deposited in said bank to the credit of "Jos. B. McDonough, county collector; sub-station account." The taxes so collected were for the year 1929, but because of the difficulties arising out of the re-assessment of property in Cook county the tax was not put into collection until 1931. From time to time as collections were made, the petitioner, as county collector,

made certain distributions to governmental agencies which were entitled to them. The tangled tax situation in Cook county, together with other causes, made collections slow. Some municipalities were paid more than their share of money which was collected during 1931. For example, the county treasurer overpaid the forest preserve $105,000. Over-payments to certain other municipalities were not in such large amounts. There remained a great amount of delinquent taxes to be collected after December 31, 1931. In the instance of the forest preserve the total amount of tax certified to be collected was $3,963,902.08, of which $1,248,169.07 was uncollected when the bank closed, June 9, 1931. The contention that the balance to the county collector's credit in the bank is not undistributed tax money is based on the claim that the county collector had distributed to the various governmental agencies except Cook county all the money he had collected up to and including December 31, 1931; that excluding Cook county he had paid each agency its full share of the collections he had then made; that by reason of this fact the balance in the account of the petitioner in the bank became, and was in fact, the property of Cook county, and should be treated as a distributed fund regardless of the fact that it still remained in the bank to the petitioner's credit as county collector and had never been transferred to him as county treasurer. The sureties on the county collector's bonds were liable, and would remain so until he had turned the balance over to himself as county treasurer. A very large part of the taxes of 1929 had not been collected, and the county collector did not pretend to make final settlement with any of the municipalities. The accounts of the county collector with the county treasurer were still open, and the amount chargeable against him as county collector by reason of delinquent taxes due Cook county was far in excess of the amount he had paid to it. There is no distribution of funds in the hands of a tax collector until he

has delivered them to the separate taxing bodies entitled thereto. (*People* v. *Dime Savings Bank,* 350 Ill. 503.) The contention of appellants that the balance is not for undistributed tax money cannot be sustained.

The superior court found that the deposits of tax money in the Englewood bank were made in violation of the County Treasurer act; that such deposits having been made wrongfully or unlawfully, the bank became a trustee *ex maleficio* of said money for the benefit of the State. Whether or not the deposits were made wrongfully or unlawfully depends upon the validity of the County Treasurer act. If it is invalid the county treasurer was under no duty to comply with its provisions. The county treasurer is a constitutional officer. (Const. 1870, art. 10, sec. 8.) By section 144 (par. 132) of the Revenue act (Smith's Stat. 1933) the treasurers in counties under township organization and the sheriffs in counties not under township organization are made *ex-officio* county collectors in their respective counties. The petitioner herein is county treasurer and *ex-officio* county collector of Cook county. The statute making the county treasurer *ex-officio* county collector does not create a separate or an additional office, nor does it impose upon the county treasurer any duties incompatible with the general duty of a treasurer to garner and safeguard public revenues. (*Foote* v. *Lake County,* 206 Ill. 185.) A primary duty of a treasurer may be likened to the duties of the court of exchequer, which was the king's treasurer and was charged with keeping the king's accounts and collecting the royal revenues. While the county treasurer, as collector, is required to give a bond annually to cover collections of revenues, such bonds are additional to the general bond of the county treasurer and are for the purpose of further securing the large amounts of taxes which are collected yearly and which do not get into the county treasury. An analogous instance is that of the sheriff in counties not under township or-

ganization. He is made *ex-officio* county collector of taxes and in the performance of his duties as such he is bound by the sheriff's bond. (*Wood* v. *Cook,* 31 Ill. 271.) The constitution of 1870 provided for the offices of State and county treasurer without prescribing any general duties. In the absence of a constitutional definition of his powers and duties the primal functions of a treasurer are necessarily implied. He is required to perform the duty of receiving and safely keeping the public funds which are entrusted to him, even in the absence of a statute. The very name given to his office denotes his obligation in this regard and the constitution implies it. Both the power and the duty of receiving and safely keeping the public funds entrusted to him are within the purview of the powers and duties which are inherent in his office and in no way depend upon the authority of the General Assembly. He can neither be deprived of the power nor relieved of the duty. In *People* v. *Brady,* 277 Ill. 124, this court, in passing upon the powers of the Auditor of Public Accounts, said: "It is not within the power of the General Assembly to deprive the Auditor of Public Accounts of the power conferred upon him by the constitution to audit claims and charges against the State created in pursuance of an appropriation made by law." And in speaking of the powers and duties of the Secretary of State and those of the Auditor of Public Accounts, in *People* v. *McCullough,* 254 Ill. 9, Mr. Justice Cartwright said: "It is not within the power of the General Assembly to deprive them of the powers conferred upon them by the constitution, either in express terms or by implication from the nature and designation of the office."

It was the positive purpose of the General Assembly as expressed in the depositary act, to compel the county treasurer to deposit daily the public funds in some of the banks of his county—not in banks selected by him but in banks selected by a majority of an official body composed

of the county treasurer, the county clerk and the chairman of the county board of such county. It is possible that none of the banks designated would be of his selection. It will be seen that if the act is fully complied with, the county treasurer would be little more than a book-keeper with respect to the custody of public funds. The act provides that he shall be discharged from responsibility (liability) for the money while it is on deposit under the provisions of the act. But it may well be questioned if it is not beyond the power of the legislature to relieve the treasurer from any such responsibility. It is the well settled law of this State that a treasurer is liable upon his bond for the loss of public funds deposited by him in a bank and lost through its failure though the bank was reputed solvent. When he executed a bond binding him to perform the duties of his office he became an insurer of the public funds coming into his hands by virtue of the law, (*Estate of Ramsay* v. *People,* 197 Ill. 572; *People* v. *McGrath,* 279 id. 550; *Oeltjen* v. *People,* 160 id. 409; *Thompson* v. *Board of Trustees,* 30 id. 99; *People* v. *Farmers State Bank,* 338 id. 134; *Swift* v. *Trustees of Schools,* 189 id. 584;) and nothing can relieve him from such obligation to safely keep and pay over such funds but the act of God or of the public enemy. *Estate of Ramsay* v. *People, supra; People* v. *McGrath, supra.*

The legislature is without power to compel a treasurer to put the public funds at profitable employment or to impose upon him any hazard whatever. When he assumes the duties of the office he accepts whatever risks and hazards there are incident to the receipt and safekeeping of the public funds, and the General Assembly is powerless to increase his hazard. He is a constitutional officer and the legislature cannot deprive him of his stewardship. Neither can it assume for itself the right to determine the depository for the public funds, whether such depository be a bank or otherwise. If such power can be exercised

by the legislature it would have the right to take from him and repose in another the custody of the public funds. Such a course of conduct would be out of harmony with the spirit of the constitution. There can be no doubt that the legislature has the right to require a treasurer to keep proper accounts and to make frequent reports of his fiscal affairs. Such duties in no way conflict with his constitutional duties. It is therefore our opinion that the legislature is without power to strip a treasurer of his right of absolute custody of the public funds which come into his possession under the law. It follows that his deposits in the bank did not create a trust *ex maleficio*.

The prerogative allows the sovereign a priority of payment out of property which is actually owned by the debtor and which has not been conveyed or encumbered prior to the time the sovereign asserts his prerogative. As to debts due the sovereign, the prerogative does not extend to property which the debtor holds as bailee, trustee or in any similar capacity. In this case the superior court was in error in decreeing that the receiver should pay to the petitioner the entire amount of the bank's cash on hand, including that due from correspondent banks. It appears that there are special depositors and trust fund claimants who can trace their funds into the assets of the bank which came into the hands of the receiver. It is inaccurate to say that those who claim funds which were special deposits, or those who lay claim to funds which were held by the bank in trust, have preferred claims. The bank is not the owner of such funds, and as to claims therefor it is not a question of preference among the various creditors of the insolvent bank but is an effort to secure funds which never, in law, would belong to the bank in the hands of the receiver. (*Capital Nat. Bank of Lincoln* v. *First Nat. Bank of Cadiz*, 172 U. S. 425, 43 L. ed. 502; *Powesheik County* v. *Merchants Nat. Bank*, 220 N. W. (Iowa) 63.) The petitioner has a preferred claim against the assets which

belonged to the bank but not against trust funds and special deposits which did not belong to it.

The several decrees entered in the consolidated cases are reversed and the causes are remanded to the superior court of Cook county, with directions to enter decrees in said causes in conformity with the views herein expressed, directing that the petitioner be paid the amounts due him from the respective banks in priority and ahead of the claims of other general creditors.

*Reversed and remanded, with directions.*