1-05-1620

SIXTH DIVISION
December 15, 2006


No. 1-05-1620


| | |
|---|---|
| VICKY ELSBURY, Mother and Next Friend of Jennifer Nicole and Kate Jaclyn, Minor Children of Roger O'Connor, Deceased; and JAMES DOBRY | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | |
| v. | Nos. 04 CH 259 & 02 L 51371 (consolidated) |
| STANN AND ASSOCIATES, ILLINOIS EARTHCARE WORKERS' COMPENSATION TRUST; GROUP SELF INSURERS' INSOLVENCY FUND; THE STATE DEPARTMENT OF INSURANCE, RATE ADJUSTMENT FUND, JUDITH BAAR TOPINKA, Treasurer, State of Illinois, as ex officio guardian of the Illinois Group Workers' Compensation Pool Insolvency Fund, | |
| | Honorable Martin S. Agran, |
| Defendants-Appellants. | Judge Presiding. |


JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Judith Baar Topinka, the Treasurer of the State of Illinois (the Treasurer), appeals the judgment of the circuit court of Cook County granting plaintiffs' writ for mandamus.[1]

_____

[1]Following the filing of this appeal, the Elsbury plaintiffs settled with defendants-appellants. We subsequently granted the

1-05-1620

Plaintiff James Dobry brought this mandamus action against the Treasurer seeking to compel her to tender the principal of her general bond to the Group Workers' Compensation Pool Insolvency Fund (the Insolvency Fund) to ensure payment of his award entered by the Illinois Industrial Commission (Commission), now known as the Illinois Workers' Compensation Commission. See 820 ILCS 305/13 (West 2004). The circuit court granted plaintiff's writ of mandamus, holding that the Insolvency Fund was intended to compensate individuals such as plaintiff and the relevant statutes required the Treasurer to protect the Insolvency Fund. For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

On April 17, 1996, plaintiff was injured while performing his duties as a cement worker for his employer, Marko Construction Company (MCC), and was thereafter unable to return to his regular duties. MCC contributed to the Earth Care Workers' Compensation Trust (the Earth Trust) pursuant to section 4a of the Workers' Compensation Act (the Act). 820 ILCS 305/4a et seq. (West 1996). Section 4a of the Act authorized employers

parties' joint motion to dismiss the Elsbury portion of this appeal on September 18, 2006. The only remaining parties to this appeal are the Treasurer and Dobry.

2

with similar risks to form workers' compensation insurance pools in order to pool risks and administer premiums and claims themselves.  The Earth Trust was such a pool authorized by section 4a of the Act.

Following plaintiff's injury, the Earth Trust made payments to him on his workers' compensation claim.  However, on October 26, 2000, plaintiff's payments from the Earth Trust ceased.  Subsequently, an order of liquidation was entered against the Earth Trust.  On December 18, 2000, plaintiff filed an amended application for adjustment of claim naming the Treasurer as a party respondent pursuant to section 4a(5) of the Act, which states in pertinent part:

"The State Treasurer is ex-officio custodian of the Group Self-Insurers' Insolvency Fund.  Monies in the Fund shall be deposited the same as are State funds ***.  It shall be subject to audit the same as State funds and accounts and shall be protected by the general bond given by the State Treasurer.  It is considered always appropriated for the purposes of compensating employees who are eligible to receive benefits from their employers pursuant to the provisions of the Workers' Compensation Act *** when their employer is the member of a group self-insurer and the group self-insurer has been unable to pay compensation due to

3

financial insolvency either prior to or following the date of the award. Monies in the Fund may be used to compensate any type of injury or occupational disease which is compensable under [the] Act.

The State Treasurer shall be joined with the group self-insurer as party respondent in any claim, or application for adjustment of claim filed against a group self-insurer whenever the compensation and medical services provided by this Act may be unpaid by reason of default of an insolvent group self-insurer.

Payment shall be made out of the Group Self-Insurers' Insolvency Fund only upon order of the Commission and only after the penal sum of the surety bond and/or securities and the assessment against the individual members of the group self-insurer in default have been exhausted." 820 ILCS 305/4a(5) (West 1996).

On January 1, 2001, the General Assembly repealed section 4a of the Act and, through Public Act 91-757, enacted the Workers' Compensation Pool Law (Pool Law) (215 ILCS 5/107a.01 et seq. (West 2002)). Pub. Act 91-757 §10 (eff. January 11, 2001). The portions of section 107a.13 of the Pool Law that are relevant to the instant case are essentially identical to section 4a of the Act with the exception of the manner in which payment from the

Group Worjers' Compensation Pool Insolvency Fund (Insolvency Fund) is ordered.  Section 107a.13(c) states that "[p]ayment shall be made out of the Group Workers' Compensation Pool Insolvency Fund only upon order of the Director [of Insurance]" (215 ILCS 5/107a.13(c) (West 2002)), as opposed to payment upon order from the Commission (820 ILCS 305/4a(5) (West 1996)).  The Pool Law created the Insolvency Fund as the successor to the Group Self-Insurers' Insolvency Fund (Self-Insurers' Fund).  Pursuant to the Pool Law, funds from the former would be transferred to the latter on the Pool Law's enactment date.  215 ILCS 5/107a.13(a) (West 2002).

On May 4, 2001, the Commission entered an order in favor of plaintiff awarding him temporary total disability benefits and medical expenses.  The findings of the Commission and its order were uncontested.  The liquidation proceedings against the Earth Trust were pending at the time of the Commission's order and MCC was insolvent and could not be found.  On May 10, 2001, plaintiff received a letter from the Director of Insurance (the Director), which reads in relevant part:

"This letter confirms that our Office will approve the payment from the Group Workers' Compensation Pool Insolvency Fund of the Medical and Temporary Total Disability payments which may be ordered paid on Mr. Dobry's claim by the

1-05-1620

Arbitrator.

Such an approval would be based on the current provision of 215 ILCS 5-107a.13, as well as other relevant laws, and in light our [sic] having no dispute as to your acknowledgment of amount previously paid on the subject injury."

On June 14, 2001, plaintiff began receiving payments from the Fund for all accrued monies and for medical and disability benefits. On October 26, 2001, the time for filing a proof of claim against the Earth Trust in its liquidation proceedings expired. Medical and disability payments continued from the Insolvency Fund until March 24, 2002, five months following the expiration of time to file a proof of claim against the Earth Trust, when payments to plaintiff ceased without notice. The record does not show that plaintiff was advised of the expiration date for filing a claim against the Earth Trust or instructed to file a claim against the Earth Trust in order to continue receiving benefits from the Insolvency Fund or Self-Insurers' Fund.

On May 9, 2002, the Industrial Commission's arbitrator ruled that plaintiff was permanently and totally disabled and that he was entitled to payments consistent with such a finding. The Commission further held that plaintiff's entitlement to the

payments was clear and uncontested and that liability for payments rested upon the State under either section 4a of the Act or section 107a.13(b) of the Pool Law. The State did not appeal, seek clarification or modification of the ruling. The State, however, apparently made representations to the Commission that it could not pay the benefits to plaintiff because both the Self-Insurers' Fund and the Insolvency Fund were insolvent. The arbitrator, although acknowledging the State's representations, specifically stated that the State failed to produce any evidence or affidavits to support its claim.

On November 13, 2002, plaintiff filed a writ of mandamus against the Treasurer to compel her to fulfill her statutorily mandated duty to financially protect the Insolvency Fund by tendering to it her general bond. Plaintiff filed his second amended complaint on December 5, 2003, and a motion for summary judgment on December 1, 2004. The Treasurer argued, among other things, that plaintiff was not entitled to payment from the Insolvency Fund because he failed to timely file a claim against the Earth Trust during the liquidation proceedings. The Treasurer's arguments were based on an affidavit issued by the Chief Deputy Director of the Department of Insurance indicating that plaintiff was not entitled to any benefits because he failed to file a claim against the Earth Trust.

The circuit court granted plaintiff's motion for summary judgment following extensive briefing and oral arguments by the parties. The court found that plaintiff's request for mandamus was proper, plaintiff had a right to payment from the Self-Insurers' Fund or Insolvency Fund and the Treasurer failed to produce any evidence or legal authority to support her claim that plaintiff was required to file a timely claim against the Earth Trust during its liquidation period to preserve his right to payment from the Self-Insurers' Fund or Insolvency Fund.

The Treasurer filed her timely appeal from the circuit court's ruling and filed a motion in this court to stay the lower court's writ of mandamus, which this court granted.

ANALYSIS

I. STANDARD OF REVIEW

The Treasurer contends that the circuit court misconstrued section 107a.13 of the Pool Law and erred by granting summary judgment to plaintiff because: (1) plaintiff is not entitled to payment from the Insolvency Fund because he failed to file a claim against the Earth Trust during its liquidation; and (2) section 107a.13 does not require the Treasurer to provide money for the fund but, rather, only mandates that the Treasurer protect the money that is paid to the fund received from other sources. We review a grant of summary judgment and issues of

8

statutory construction, both of which concern questions of law,
de novo.  Read v. Sheahan, 359 Ill. App. 3d 89, 92 (2005);
O'Connor v. County of Cook, 337 Ill. App. 3d 902, 906 (2003).

## II. REQUIREMENTS FOR A WRIT OF MANDAMUS

Mandamus is an extraordinary remedy which is used to enforce
" 'the performance of official duties by a public officer where
no exercise of discretion on his part is involved.' "  Noyola v.
Board of Education of the City of Chicago, 179 Ill. 2d 121, 133
(1997), quoting Madden v. Cronson, 114 Ill. 2d 504, 514 (1986).
It is not a writ of right but is awarded as a matter of judicial
discretion.  League of Women Voters v. County of Peoria, 121 Ill.
2d 236, 242 (1987).  The party seeking a writ of mandamus bears
the burden of establishing an absolute right to its issuance.
Romero v. O'Sullivan, 302 Ill. App. 3d 1031, 1034 (1999).  The
issuance of a writ of mandamus is appropriate only where the
plaintiff shows a clear, affirmative right to the requested
relief, a clear duty to act on the defendant's part, and clear
authority in the defendant to comply with the writ.  Lewis E. v.
Spagnolo, 186 Ill. 2d 198, 229 (1999).

Plaintiff, by virtue of seeking a writ of mandamus, has the
burden of establishing three things in this case: (1) that he has
a clear right to payment form the Insolvency Fund; (2) that the
Treasurer has a clear duty to post her bond to the Insolvency

1-05-1620

Fund; and (3) that the Treasurer has the clear authority to post her bond to protect the Fund should she be ordered to do so.[2] See Lewis E., 186 Ill. 2d at 229.

### III. RIGHT TO PAYMENT FROM THE FUND

We first note that the Treasurer asserts that section 107a.13 of the Pool Law is the provision that should be applied to the circumstances of this case. In that regard, the Treasurer argues that plaintiff has no right to payment from the Insolvency Fund because the Director did not order the Fund to pay plaintiff's benefits. This argument lacks merit because it is well-established law in Illinois that "a worker's rights under the Workers' Compensation Act are governed by the law in effect at the time of injury." Westinghouse Airbake Co. v. Industrial Comm'n, 306 Ill. App. 3d 853, 857 (1999), citing Wilson-Raymond Constructors Co. v. Industrial Comm'n, 79 Ill. 2d 45, 51 (1980). The fact the Commission ordered payment from the Insolvency Fund following the repeal of section 4a of the Act is of no consequence here. It is " 'the law in effect at the time of the injury that governs the rights of the parties and not the law effective at the time the award is made ***.' " (Emphasis omitted.) Wilson-Raymond, 79 Ill. 2d at 52-53, quoting Stanswsky

---

[2]The Treasurer does not argue on appeal that she is not authorized to post her bond.

10

v. Industrial Comm'n, 344 Ill. 436, 440 (1931). Therefore, section 4a of the Act applies to plaintiff's claim because it is undisputed that his injury occurred in 1996 and that the Commissions ordered the Insolvency Fund to pay plaintiff's benefits.

The Treasurer asserts that plaintiff was not eligible to recover from the Insolvency Fund because he failed to follow the procedure set forth in Article XIII of the Illinois Insurance Code (215 ILCS 5/187 et seq. (West 2004)) (the Insurance Code). In other words, once the time for filing a claim against an insolvent risk pool has expired, a claimant's right to seek payment from the Insolvency Fund will be extinguished. We disagree.

In support of her position, the Treasurer cites to certain sections of the Insurance Code for the proposition that plaintiff failed to comply with the mandatory liquidation process specified in Article XIII of the Code. The Treasurer also cites to Cork v. Associated International Insurance Managers Inc., 58 Ill. App. 2d 331, 340 (1965), which states: "The object of a liquidation proceeding is to treat all creditors in a equitable manner, *** the equal sharing by creditors in the assets of an insolvent in proportion to their claims." As a result of plaintiff's failure to properly file a timely claim pursuant to the Insurance Code,

11

the Treasurer claims that he is precluded from receiving relief from any source, at any time.

Although we agree with the general principle announced in Cork, we find that the Treasurer's reliance on the Code and the Cork case is misplaced. First, there is no section in the Act or Insurance Code that conditions the relief plaintiff is seeking on his filing a timely liquidation claim pursuant to Article XIII. In fact, the Pool Law specifically states that provisions of the Insurance Code to which the Treasurer cites apply after December 31, 2000. Section 107a.04(a)(1) provides:

"[A]fter December 31, 2000, group workers' compensation pools shall for the purpose of this Article, and this Article only, be considered as though they were assessable domestic mutual insurance companies and subject to the following:

(1) Article XII 1/2, Article XIII, Article XIII ½, Article XXIV ***." 215 ILCS 5/107a.04(a)(1) (West 2004).

It is clear, based on section 107a.04(a)(1), that Article XIII of the Insurance Code did not apply to workers' compensation pools before December 31, 2000.

Furthermore, the Cork case is inapposite because it involved an insurance broker that provided surplus line insurance services to an international insurer that later became insolvent. See

12

generally Cork, 58 Ill. App. 2d 331. The Cork case did not address the relief sought by a plaintiff that was found to be permanently disabled and entitled to payment pursuant to statute from the Insolvency Fund. The language of the Act and the Pool Law, on the other hand, specifically addresses and provides for the remedy that plaintiff seeks here. The Insolvency Fund and the Self-Insurers' Fund "is considered always appropriated for the purposes of compensating employees who are eligible to receive benefits from their employers pursuant to the provisions of the Workers' Compensation Act *** when their employer is the member of a group self-insurer and the group self-insurer has been unable to pay compensation due to financial insolvency either prior to or following the date of the award." 820 ILCS 305/4a(5) (West 1996). Contrary to the Treasurer's assertion, there is no condition precedent, expressed or implied, by the legislature in this text of the statute that a worker participate in the liquidation proceedings in Article XIII of the Insurance Code.

Even if we were to find that the liquidation proceedings of Article XIII applied here, the fact that plaintiff failed to participate does not preclude him from receiving benefits from the Insolvency Fund. First, we point out that although the Treasurer assigns great importance to plaintiff's compliance with

13

1-05-1620

the provisions of the Insurance Code, plaintiff was not notified of his "requirement" to file a claim as mandated by section 208(1) of the Insurance Code, which states:

"When in a liquidation, rehabilitation, or conservation proceeding against an insurer under this Article an order has been entered for the filing of claims, all persons who may have claims against such insurer shall present the same to the Liquidator, Rehabilitator or Conservator, as the case may be, at a place specified in the notice for filing of claims within such time as may be fixed by order of the Court.  The Director shall notify all persons who may have claims against such insurer as disclosed by its books and records, to present the same to him within the time as fixed.  The last date for the filing of proof of claim shall be specified in the notice.  Such notice shall be given in a manner determined by the Court.  The Director shall also cause a notice specifying the last day for filing of claims to be published once a week for three consecutive weeks in a newspaper published in the county where such proceedings are pending and in such other newspapers as he may deem advisable."  215 ILCS 5/208(1) (West 2004).

There is nothing in the record that suggests that plaintiff received such notice to file a claim.  In fact, the record

14

reveals that while the Earth Trust was being liquidated by the Director, plaintiff continued to receive benefits from the Insolvency Fund and was not aware that any further action was necessary to continue his benefits. Plaintiff relied on the letter from the Director indicating that the Insolvency Fund would pay his medical and disability benefits as ordered by the Commission.

Second, both sections 4a(5) of the Act and 107a.13 of the Pool Law contemplate precisely the benefit that plaintiff was receiving prior to its insolvency. As stated above, the monies in the Insolvency Fund are considered always appropriated when: (1) employees are eligible to receive benefits from their employer and the employer is a member of a group self-insurer fund; (2) the group fund has become unable to pay due to financial insolvency; and (3) the claimant suffers from any type of injury or occupational disease that is compensable under the Act. The Treasurer does not dispute that plaintiff meets the above required criteria to receive benefits from the Insolvency Fund. It is further undisputed that neither the Treasurer nor the Director ever raised any objection to the fact that plaintiff was entitled to receive medical and disability benefits under section 4a of the Act until the Insolvency Fund became insolvent. Because plaintiff has clearly satisfied the requirements of

section 4a of the Act, we find that he is entitled to receive payments from the Insolvency Fund.

## IV. TREASURER'S DUTY TO PROTECT THE FUND

The Treasurer next argues that even if plaintiff were entitled to payment from the Insolvency Fund, she has no duty to post her general bond to the Fund because the Treasurer is only required to protect the funds that have been deposited into the Insolvency Fund and the Director, not the Treasurer, is responsible for ensuring the solvency of the Fund. Ramsay's Estate v. People ex rel. Southern Illinois Penitentiary Commissioners, 197 Ill. 572 (1902); People ex rel. Nelson v. West Englewood Trust & Savings Bank, 353 Ill. 451 (1933). Specifically, the Treasurer asserts that the plain language of the Pool Law and the Act does not require the Treasurer to supply funds to the Insolvency Fund, but only protect the funds that have already been deposited in the Insolvency Fund. While we agree with the Treasurer that the Director is responsible for collecting money to be deposited into the Insolvency Fund, this does not mean that the Treasurer may ignore her statutory duty as mandated by the Act. Additionally, the cases to which the Treasurer cites are inapposite to the issues before this court because those cases did not involve a statute that required the official to post a bond for the protection of a certain fund.

16

See <u>Ramsay's Estate v. People ex rel. Southern Illinois</u> <u>Penitentiary Commissioners</u>, 197 Ill. 572 (1902); <u>People ex rel.</u> <u>Nelson v. West Englewood Trust & Savings Bank</u>, 353 Ill. 451 (1933).  We cannot construe section 4a of the Act, as the Treasurer does, to only require her to protect the money in the Insolvency Fund.  We hold, based on the plain language of the statute, that the legislature did not intend for the Treasurer's bond to simply protect the funds received from third parties, but to protect the fund in a manner that effectuates its intended purpose.

The cardinal principle of statutory interpretation is that the court must effectuate legislative intent.  <u>In re Justin M.B.</u>, 204 Ill. 2d 120, 123 (2003), citing <u>Solich v. George & Anna</u> <u>Portes Cancer Prevention Center of Chicago, Inc.</u>, 158 Ill. 2d 76, 81 (1994).  The best indicator of legislative intent is statutory language.  <u>Michigan Avenue National Bank v. County of Cook</u>, 191 Ill. 2d 493, 504 (2000).  Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it.  <u>People v.</u> <u>Taylor</u>, 221 Ill. 2d 157, 162 (2006), citing <u>People v. Davis</u>, 199 Ill. 2d 130, 135 (2002).  However, a reviewing court's inquiry must always begin with the language of the statute itself, which is the surest and most reliable indicator of the legislature's

17

intent. Taylor, 221 Ill. 2d at 162; People v. Pullen, 192 Ill. 2d 36, 42 (2000). When the language of a statute is clear, it must be applied as written without resort to further aids or tools of interpretation. In re R.L.S., 218 Ill. 2d 428, 433 (2006). If statutory language is plain, the court cannot read exceptions, limitations or conditions into a statute that the legislature did not express. In re D.D., 196 Ill. 2d 405, 419 (2001); Garza v. Navistar International Transportation Corp., 172 Ill. 2d 373, 378 (1996), quoting Solich, 158 Ill. 2d at 83. Only when the meaning of the enactment cannot be ascertained from the language may a court look beyond the language and resort to aids for construction. In re D.D., 196 Ill. 2d at 419; Gem Electronics of Monmouth, Inc. v. Department of Revenue, 183 Ill. 2d 470, 475 (1998); Solich, 158 Ill. 2d at 81.

The operative language here can be found in section 107a.13(b) of the Pool Law, which states, in relevant part, that "[t]he Fund shall be subject to audit the same as State funds and accounts and shall be protected by the general bond given by the State Treasurer." 215 ILCS 5/107a.13(b) (West 2004). First, we note that the language used by the legislature in section 4a of the Act and 107a.13(b) of the Pool Law ("the Fund shall be *** protected"), refers to the Fund and not the monies in the Fund. Second, the legislature did not include language in section 4a of

18

the Act or section 107a.13(b) of the Pool Law limiting the Treasurer's bond to protect the monies in the Insolvency Fund at a specified time. Furthermore, if the legislature was inclined to apply the Treasurer's bond only to the monies previously received by the Insolvency Fund at a specified time, it could have easily accomplished its objective by specifying such limitations in the language of the provision. The legislature did not express such an intention and we will not write limitations into a provision that are not expressed.

Moreover, in our view, when reading section 4a of the Act or section 107a.13 of the Pool Law, together with the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 2004)) in its entirety, the result sought by the Treasurer is incompatible with the purpose of the Act. The fundamental purpose of the Act is to promote the general welfare of the people of Illinois by providing employees and their dependents prompt, sure and definite compensation, together with a quick and efficient remedy for injuries suffered in the course of employment. General American Life Insurance Co. v. Industrial Comm'n, 97 Ill. 2d 359, 370 (1983). "The Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers, and it is to be liberally construed to accomplish that objective." Flynn v. Industrial Comm'n, 211 Ill. 2d 546, 556 (2004), citing

19

1-05-1620

Peoria County Belwood Nursing Home v. Industrial Comm'n, 115 Ill. 2d 524, 529 (1987); Pathfinder Co. v. Industrial Comm'n, 62 Ill. 2d 556, 563 (1976); Jacobs v. Industrial Comm'n, 269 Ill. App. 3d 444, 447 (1995).

We agree with plaintiff's construction of section 107a.13 of the Pool Law, which is that the legislature intended that the Insolvency Fund would be created with a minimum balance and protected if necessary by the Treasurer's bond, for the purpose of paying benefits to injured workers who would otherwise receive compensation from an insolvent pooled risk fund. Additional support for this construction is found in section 4a-1 of the Act, where the legislature established an advisory board for the purpose of, among other things, "providing for the continuation of workers' compensation and occupational disease benefits due and unpaid or interrupted due to the inability of an insolvent self-insurer." 820 ILCS 305/4a-1 (West 1996). We thus reject the Treasurer's interpretation of the Act which would only protect monies received by the Insolvency Fund, thereby limiting employees' benefits and frustrating the purpose of the Act when a group risk pool becomes insolvent.

Based on the language of section 4a of the Act, section 107a.13 of the Pool Law and the stated purpose of the Act generally, we conclude that the intent of the legislature was to

20

ensure payment of workers' benefits from the Insolvency Fund, without interruption by having the Treasurer protect the fund with her bond.

We find it important to note that plaintiff asks this court to order the Director to commence payment from the Insolvency Fund once monies are deposited therein. The Director, however, is not a party to this appeal and no relief was sought against him in the circuit court. We, therefore, deny plaintiff's request. This ruling does not affect plaintiff's right to receive benefits from the Fund as explained previously in this opinion.

## V. CONCLUSION

For the foregoing reasons, we hold that plaintiff was clearly entitled to payment from the Insolvency Fund, he was not required to file a claim against the Earth Trust in order to be eligible for benefits from the Insolvency Fund and the Treasurer had a clear duty to post her general bond to protect the Insolvency Fund pursuant to the Act. As a result, the circuit court properly granted summary judgment and a writ of <u>mandamus</u> in favor of plaintiff. Accordingly, the judgment of the circuit court is affirmed.

Affirmed and writ awarded.

McNULTY and JOSEPH GORDON, JJ., concur.